United States District Court
Southern District of Texas

**ENTERED**

October 21, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ARTIST  THORNTON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-66 |
| | § | |
| HUGHES, WATTERS AND ASKANASE, | § | |
| LLP, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION ON PENDING MOTIONS

Plaintiffs Artist Thornton and Elaine-Wanda Thornton, proceeding *pro se*, filed this action on February 26, 2016 and filed an amended complaint on June 27, 2016 (D.E. 1, 33). Plaintiffs allege that Defendants EverBank, a Federal Savings Association, and Everhome Mortgage, a former division of EverBank, n/k/a/ EverBank, a Federal Savings Association (collectively, EverBank) and Hughes, Watters and Askanase, LLP (HWA)[1] have violated provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (FDCPA). Plaintiffs also allege that Defendants have violated provisions of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1961 et seq., (RICO), and the Texas Business and Commerce Code. In addition, Plaintiffs have

---

[1] It is noted that Plaintiffs attempted to serve Walter Investment Corporation but violated Rule 4(c)(2) of the Federal Rules of Civil procedure because they served the summons and complaint themselves (D.E. 5). Walter Investment Corporation has not made an appearance in this matter. It is further noted that Plaintiffs attempted to serve Ditech, but the complaint was returned as "unexecutable/undeliverable" (D.E. 8). At a hearing held on June 6, 2016, EverBank and HWA waived any claims they had for improper service (Hrg. Trans. At pp. 23-24; D.E. 31 at pp. 23-24). At this time EverBank and HWA are the only defendants who have been properly served and who have appeared.

alleged a state law cause of action for intentional infliction of emotional distress and have requested that the court "stop auction of home on 3/1/16."

Pending are the following motions:  Defendant EverBank's motion to dismiss (D.E. 10); Defendant HWA's motion to dismiss (D.E. 12);  Defendant EverBank's motion to dismiss the amended complaint (D.E. 35); Defendant HWA's motion to dismiss the amended complaint (D.E. 37); Plaintiffs' motion to recuse the undersigned U.S. Magistrate Judge from hearing any issues in this case (included as part of D.E. 33, Plaintiff's Amended Complaint); and Plaintiffs' motions to rebut Everbank's motion to dismiss (D.E. 40) and for summary judgment (D.E. 43), construed as additional responses to the motions to dismiss.  Responses to all pending motions have been filed.

For the reasons set forth more fully below, it is respectfully recommended that Plaintiffs' motions to recuse the undersigned and for summary judgment be denied, and Defendants' motions to dismiss be converted to motions for summary judgment and granted.

## BACKGROUND

On March 22, 2004 Plaintiff Elaine Thornton executed a promissory note in the original principal amount of $114,500, payable to Bank of America, N.A.  Plaintiff Artist Thornton did not sign the note.  The note was endorsed in blank by Bank of America, N.A.  (D.E. 44-1 at pp. 5-7).  A deed of trust was executed by both Plaintiffs on the same day and filed in Nueces County, Texas (D.E. 44-1 at pp. 8-25).

In July 2013, Plaintiffs received notice from Everhome Mortgage that effective July 1, 2013, Everhome was servicing Plaintiffs' account.  Everhome 's records showed a

balance of $99,898.85 on the note.  The notice stated that "The Creditor to whom you owe this debt is EverBank."  Plaintiffs also were informed that unless they notified Everhome within thirty days of receiving the notice that they disputed the validity of the debt, Everhome would assume the debt was valid (D.E. 14 at p. 13).

Plaintiffs responded to the letter on July 5, 2013, stating that they understood there was a desire to transfer their mortgage to Everhome.  Plaintiffs asked to be provided with "the original blue ink contract" that they signed when they purchased their home (D.E. 14 at p. 21).  In response, Everhome told Plaintiffs that it was not obligated to release the original document (D.E. 14 at p. 23).  On August 26, 2013, Plaintiffs sent a letter to Everhome stating that they did not have any verification that Everhome owned the note or any other documents indicating that Plaintiffs owed Everhome money (D.E. 14 at p. 24).

Plaintiffs received a letter from Everhome Mortgage dated September 18, 2013 in which Everhome identified itself as a debt collector and stated that the letter was an attempt to collect a debt.  The letter purported to offer Plaintiffs alternatives to foreclosure on the note (D.E. 43 at pp. 7-8).

On October 2, 2013 defendant HWA sent a notice to Plaintiffs stating that it was a debt collector attempting to collect a consumer debt and that it represented EverBank, the creditor to whom the debt was owed.  Plaintiffs were told that if they notified HWA within thirty days that they disputed the debt, HWA would obtain and mail verification of the debt (D.E. 14 at pp. 26-27).

On October 8, 2013, Plaintiffs sent to Everhome Mortgage a document entitled "Offer of Settlement."  In the document, Plaintiffs asked for proof of a debt or obligation owed by Plaintiffs to Everhome.  Plaintiffs also asked for proof that Everhome "is in 'factual possession'" of "the original wet ink signature promissory note." (D.E. 14 at p. 9, "Proof of Claim" 12).  In a letter to Plaintiffs from HWA dated October 16, 2013, HWA acknowledged that Plaintiffs "dispute[] the accuracy of an item that is in Hughes, Watters & Askanase, L.L.P.'s file on [Plaintiffs]."  HWA indicated that the firm was investigating and would cease collection activity until the investigation was complete (D.E. 14 at p. 33).

By letter dated December 5, 2013, HWA told plaintiffs that the firm had obtained a letter from Everhome Mortgage and was enclosing it.  HWA denied inaccuracies alleged by Plaintiffs in former correspondence.  A copy of the letter from Everhome was not attached to the evidence submitted (D.E. 16 at p. 41).  Plaintiffs responded on December 16, 2013, telling HWA that they continued to dispute that Everhome owned the note (D.E. 16 at p. 45).  Plaintiffs continued to seek verification of the debt (D.E. 14 at p. 52).

Plaintiffs received a notice dated May 15, 2014 informing them that the servicing of their account was transferred from Everhome Mortgage to Green Tree on May 1, 2014. The amount of the debt was $107,502.03.  Plaintiffs were told that unless they notified Green Tree within thirty days that they disputed the validity of the debt, it would be considered valid.  Green Tree identified itself as a debt collector attempting to collect a debt (D.E. 14 at p. 54).  Plaintiffs next received a notice from defendant HWA dated May

19, 2014 where HWA identified itself as a debt collector attempting to collect a debt on behalf of Green Tree Servicing LLC, who was the servicer of the debt held by Everhome. The notice contained language instructing Plaintiffs on the thirty-day period to contest the validity of the debt and instructed Plaintiffs that foreclosure was imminent (D.E. 14 at pp. 55-56).

Plaintiffs received a billing statement from "ditech, a Walter company," dated November 16, 2015, informing them that the past due amount on their house totaled $35,175.69. The notice stated that the communication was from a debt collector and was an attempt to collect a debt (D.E. 43 at pp. 14-15).

By letter dated February 1, 2016, HWA sent Plaintiffs a notice of maturity/acceleration and a notice of a substitute trustee sale. HWA identified itself as a debt collector and said that it represented Ditech Financial, LLC, the servicer of the note, and that Everbank was the Mortgagee on the note. The foreclosure sale was set for March 1, 2016 (D.E. 17 at pp. 9-11).

A preliminary hearing was held in this matter on May 27, 2016. Defendants EverBank and HWA waived any defects in service of process upon them. Plaintiffs were given an opportunity to amend their pleadings. The status of the foreclosure proceedings is unclear.

### A. Plaintiffs' Allegations

Plaintiffs allege the following: (1) neither HWA nor EverBank *et al.*, have produced evidence showing that EverBank is the owner in due course of the "original wet ink promissory note," in violation of the FDCPA, 15 U.S.C. § 1692g; (2) Neither of the

defendants has standing to foreclose on the note without providing proof that they are entitled to collect on the note in violation of 15 U.S.C. § 1692; (3) Repeated calls were made to Plaintiffs after they requested in writing that Defendants prove the validity of the debt, in violation of 15 U.S.C. § 1692c; (4) Defendants have refused to answer questions about how they obtained the debt and how much they paid for it, in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 and 1962 (RICO); (5)  Because Defendants posted the property on foreclosure lists, Plaintiffs have received mail from real estate brokers, attorneys and security companies, in violation of 15 U.S.C. 1692; (6) Defendants have proceeded with foreclosure proceedings without providing proof that they own the note, in violation of 15 U.S.C. § 1692f; (7) Defendants force-placed insurance on Plaintiffs' home and attempted to pay the property taxes;[2] (8) Defendants have failed to provide proof of the existence of the debt or obligation in violation of  12 U.S.C. § 1813; (9) As a result of Defendants' actions, Plaintiffs have suffered emotional stress, inconvenience, embarrassment, humiliation and financial damage.

Plaintiffs' claims stem from their contention that because Bank of America was the original holder of the note, Plaintiffs are entitled to proof that subsequent holders of the

---

[2] Plaintiffs are part of a class action lawsuit addressing allegations that EverBank illegally force-placed insurance on borrowers' property (D.E. 33 at pp. 10-16; D.E. 34).  Plaintiffs' complaint regarding the force-placing of insurance are not addressed in this Memorandum and Recommendation.  Nor is the allegation that Defendants wrongfully paid property taxes on the property addressed as a separate issue, because it is part of Plaintiffs' overall allegation that EverBank did not have the right to enforce the terms of the note on their home.  If the District Court believes that these issues should be addressed more thoroughly, a supplemental Memorandum and Recommendation will be filed.

note, such as EverBank and the entities that have serviced the note, have authority to collect on the note.  Plaintiffs argue that only the "wet ink original promissory note" will suffice as proof that EverBank is a holder in due course of the note.  Plaintiffs further argue that without presentation of the note, they are not obligated to pay the balance on it.[3]

Plaintiffs also moved for the undersigned United States Magistrate Judge to recuse herself.

**B.  Defendants' Response**

**(1) EverBank**

In its motions to dismiss and its response to what Plaintiffs called their motion for summary judgment (D.E. 10, 35, 44), Defendant EverBank argues that Plaintiffs have failed to state a claim because (1) EverBank is not a debt collector; (2) Plaintiffs fail to allege facts showing that Everbank committed any act or omission in violation of the FDCPA; (3) Plaintiffs fail to allege that the debt being collected is a consumer debt; (4) vicarious liability for the actions of a debt collector are not actionable under the FDCPA; (5) Plaintiffs did not allege that they disputed the debt within thirty days of receiving notice of it; (6) the "wet ink" note need not be produced by the holder of the note;  (7) Plaintiffs' pleadings are not sufficient in that they lump defendants together and

---

[3]  Although, as discussed below, presentation of the original note is not required, Defendant HWA submitted an affidavit to the Court on September 7, 2016 in which its attorney stated that Plaintiffs had been provided a copy of the original promissory note in June 2016.  In addition, Plaintiffs were invited to view the original note at HWA's office (D.E. 44-2).

EverBank does not have sufficient notice of the claims made against it; (8) Plaintiffs fail to state a RICO cause of action under 18 U.S.C. §§ 1961 or 1962; and (9) Plaintiffs fail to state a claim under Texas Business and Commerce Code § 1.308.

In addition, EverBank argues that Documents attached to Plaintiffs' motion for summary judgment are not authenticated and any FDCPA claims against EverBank are barred by the statute of limitations.  EverBank also is opposed to Plaintiffs' request that the undersigned U.S. Magistrate Judge recuse herself from this case.

### (2) HWA

Defendant HWA argues in its motions to dismiss and response to what Plaintiffs called their motion for summary judgment (D.E. 12, 37, 45) that (1) Plaintiffs' allegations are vague and conclusory and fail to state a claim; (2) Plaintiffs do not allege that HWA committed any act or omission in violation of the FDCPA; (3) Plaintiffs fail to allege that HWA gave them written notice of a debt and fail to allege facts demonstrating that they notified HWA that they disputed the debt within the required thirty-day period; (4) HWA was not required to produce the "wet ink" note; (5) Plaintiffs have failed to allege facts to state a claim for intentional infliction of emotional distress; (6) Plaintiffs' claims against "all defendants" are insufficient to put HWA on notice about Plaintiffs' allegations against it; (7) Plaintiffs fail to state a claim for a RICO violation under 18 U.S.C. §§ 1961 and 1962 and (8) Plaintiffs fail to state a claim under Texas Business and Commerce Code § 1.308.  HWA concedes for purposes of the pending motions that it is a debt collector and that Plaintiffs are complaining about a consumer debt.

## APPLICABLE LAW

### A.  Motion to Recuse

Plaintiffs ask that the undersigned magistrate judge recuse herself because she has shown bias against them and appeared to side with Defendants at a hearing.

Disqualification and recusal of a federal judge are governed by 28 U.S.C. §§ 144, 455.  These sections of the United States Code address a judicial officer's bias or prejudice.  Section 144 sets forth the procedure for a party to file a motion requesting that a judicial officer remove himself from a case, whereas section 455 requires a judicial officer to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The requirements of the two sections are "similar if not identical."  *U.S. v. MMR Corp.,* 954 F.2d 1040, 1045 (5th Cir. 1992).  A motion for recusal is committed to the sound discretion of the District Court.  *Patterson v. Mobil Oil Corp.,* 335 F.3d 476, 483 (5th Cir. 2003); *United States v. Merkt*, 794 F.2d 950, 960 (5th Cir. 1986).

Title 28, United States Code, Section 144 requires that when a party to any proceeding in a district court makes and files a timely and sufficient affidavit alleging that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further, and another judge shall be assigned to hear the proceeding.  28 U.S.C. § 144. Once the motion is filed, the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matter alleged.  *Henderson v. Dep't. of Public Safety and Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990) (citations omitted).  A legally sufficient

affidavit must meet the following requirements: (1) the facts must be material and stated with particularity; (2) the facts must be such that if true such facts would convince a reasonable man that a bias exists; and (3) the facts must show that the bias is personal, as opposed to judicial, in nature.  *Id.* (citing *Parrish v. Bd. of Comm. of Alabama St. Bar,* 524 F.2d 98, 100 (5th Cir. 1975)); *Merkt,* 794 F.2d at 960.  If the affidavit is not legally sufficient under § 144, there is no need for referral of the matter to another judge. *Henderson*, 901 F.2d at 1296.  Moreover, the moving party must exercise reasonable diligence in filing an affidavit after discovering facts which show bias.  *Pomeroy v. Merritt Plaza Nursing Home, Inc.,* 760 F.2d 654 (5th Cir. 1985).

Under the first two parts of the test for legal sufficiency of the affidavit, the facts in Plaintiffs' affidavit must be material and stated with particularity, and if true, such facts would convince a reasonable man that a bias exists.  *Henderson,* 901 F.2d at 1296.  The court notes that the Plaintiffs' pleading, while it is acknowledged by a notary to be signed by the Plaintiffs, does not contain an affirmation by Plaintiffs that they are swearing under oath that the facts are true, nor do they aver that the statements in the pleading are made under penalty of perjury.  Nevertheless, the pleading will be treated as one made under oath in order to give Plaintiffs the benefit of the doubt.

To the extent that Plaintiffs complain of adverse rulings, such rulings are not an adequate basis for demanding recusal.  *MMR Corp.,* 954 F.2d at 1045; *Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997).  The recusal and disqualification statutes are not designed to substitute for an appeal; Plaintiffs' remedy lay in appealing the magistrate judge's ruling to the District Judge.  In the case of dispositive motions, Plaintiffs have the

right to file objections within fourteen days of receipt of a copy of the Memorandum and Recommendation.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b).

In *Liteky v. United States*, 510 U.S. 540 (1994), the Supreme Court noted that opinions formed by a judge on the basis of facts introduced or events occurring in the course of the proceedings do not constitute a basis for a bias or partiality motion "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.   Judicial remarks during a proceeding that are critical, or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.   Remarks may support a bias challenge if they reveal an opinion that derives from an extrajudicial source or reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.*   Expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women sometimes display, are not enough to show bias against a party. *Id.* at 555-556.

Plaintiffs claim that the undersigned did not understand the basis of their case and questioned them on matters not before the Court.   Plaintiffs also claim that the undersigned misinformed them regarding the requirements of service of process on defendants.   Finally, Plaintiffs claim that the undersigned told them that they had no rights in Court.

Plaintiffs offer no specific facts in support of their allegations of bias.  They do not describe how they believe the undersigned misunderstood their allegations, or describe

any inappropriate questions.[4]   Although Plaintiffs claim that they were told they had no rights in court, they were given an opportunity to amend their complaint and have done so (D.E. 29, 33).   The undersigned finds that Plaintiffs have failed to show bias and recommends that Plaintiffs' motion to recuse be denied.   The affidavit is not sufficient to show bias and prejudice.   Plaintiffs retain their right to appeal non-case dispositive rulings to the District Judge and to file objections to the recommendations of undersigned on dispositive matters.   It is respectfully recommended that Plaintiffs' motion to recuse be denied because the motion does not state facts that would convince a reasonable man that a bias exists.[5]

### B.  Standard of Review

### 1.  Conversion of Rule 12(b)(6) Motion to Rule 56 Summary Judgment Motion

Defendants move to dismiss Plaintiffs' complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   However, Rule 12(d) provides that if on a Rule 12(b)(6) motion matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.   All parties must be given a reasonable opportunity to present all the material that is pertinent

---

[4] The transcript of the hearing held June 6, 2016 is filed at D.E. 31, but Plaintiffs have not cited to it.

[5] While it is true that the court was somewhat short and curt with the Plaintiffs, there is no indication in the transcript (D.E. 31) of any bias.   The court was alarmed that the Plaintiffs were willing to risk loss of their home through foreclosure after they admitted that they had completely stopped paying on the promissory note because they were under the misguided impression that foreclosure could not occur without production of the "wet ink" copy of the note.   As discussed *infra*, there is no requirement that the servicer of the mortgage produce the original note.

to the motion.  The Fifth Circuit recognizes that materials filed concurrently with the pleadings are sufficient to convert a motion to dismiss into one for summary judgment. *Porter v. Shearson Lehman Bros, Inc.*, 802 F.Supp. 41, 52 (S.D. Tex. 1992)(citing *General Guar. Ins. Co. v. Parkerson*, 369 F.2d 821 (5th Cir. 1966)).  Either party, or both, may bring the conversion provision into operation by submitting extraneous materials.  *Id.*  Rule 12(b) gives a district court "'complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion.'"  *Isquith on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n. 3 (5th Cir. 1988)(quoting 5 C Wright & A. Miller, Federal Practice and Procedure § 1366 (1969)).  Once the court has accepted materials outside the pleadings, it must convert the motion to dismiss to one for summary judgment.  *Porter*, 802 F.Supp. at 52.

When a court converts a Rule 12(b)(6) motion into a summary judgment, the parties must be given notice of the conversion and a reasonable opportunity to present all material that is pertinent to the motion.  Fed. R. Civ. P. 12(d); *Isquith*, 847 F.2d at 195. The purpose of the notice provision is to prevent surprise to the party against whom the judgment is given.  *Clark v. Tarrant County, Texas*, 798 F.2d 736, 745 (5th Cir. 1986).

However, a district court is not required to give express notice that it will treat the motion to dismiss as one for summary judgment.  *Grynberg v. BP P.L.C.*, 855 F.Supp.2d 625, 639 (S.D. Tex. 2012).  Rather, the nonmovant must have notice that the district court could treat the motion as one for summary judgment, rather than whether the court will actually do so.  *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990).

Typically, a nonmovant is considered to have notice when the nonmovant is aware that materials have been attached to the motion to dismiss, has had time to respond to the motion, and is aware that the court may rule on the motion using the additional materials. *Grynberg*, 885 F.Supp.2d at 639 (citing *Isquith*, 847 F.2d 186, 195-196)).

In this case, Plaintiffs, as nonmovants, attached materials to their responses to the motions to dismiss which they wish the Court to consider. They also have had ample time to respond to the motions to dismiss and have filed responses. Therefore, Plaintiffs have had notice that the motion to dismiss could be treated as a motion for summary judgment. *See Wood v. Gateway, Inc.*, No. Civ.A.5:03-CV-007-C, 2003 WL 23109832 at *6 (N.D. Tex. 2003)(when nonmovant submits material outside pleadings in response to 12(b)(6) motion, nonmovant is deemed to have constructive notice that motion to dismiss might be treated as motion for summary judgment) and *Pemex Exploracion y Produccion v. BADF Corp.*, Nos. H-10-1997, H-11-2019, 2014 WL 1818641 at *2 (S.D. Tex. 2014)(in Rule 12(b)(6) motion where both parties either submitted or referenced materials outside pleadings and neither party objected, both parties had notice that motion could be treated as one for summary judgment). Thus, it is recommended that Defendants' motions to dismiss be converted to motions for summary judgment.

### 2. Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.*

Affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). *See also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)(per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(per curiam)(stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence.[6] *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)(per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then

---

[6] Defendants argue correctly that the documents submitted by Plaintiffs are not properly authenticated. However, rather than order the Plaintiffs to provide authenticated copies, it will be assumed that the documents are true and correct copies of the originals for purposes of the pending motions.

the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

### C. Fair Debt Collection Practices Act

The purpose of the FDCPA, 15 U.S.C. § 1692, et seq., is to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e). Plaintiffs assert that Defendants have violated Sections 1692, 1692b, 1692c, 1692f, and 1692g of the FDCPA.

### 1. 15 U.S.C. § 1692

Plaintiffs assert that their various factual allegations state a cause of action under 15 U.S.C. § 1692. However, that section of the FDCPA sets out congressional findings and declaration of purpose of the statute. It does not further describe specific practices that are prohibited. Accordingly, Plaintiffs cannot make out a claim for violation of 15 U.S.C. § 1692.

### 2. 15 U.S.C. § 1692b

Plaintiffs claim that they are entitled to relief pursuant to 15 U.S.C. § 1692b because Defendants have ignored written requests to tell Plaintiffs what Defendants paid to obtain the debt. Section 1692b of the statute addresses acquisition of location information by a debt collector and provides rules for debt collectors to follow when communicating with any person *other than the consumer* for the purpose of acquiring location information about the consumer. Plaintiffs in this case are consumers under the definition provided by the statute[7] and have not alleged that Defendants have contacted any person other than themselves about this debt. Nor does the statute require that a debt collector reveal how much it paid to obtain a debt from an original lender. Thus, Plaintiffs cannot make out a claim for violation of this section of the statute and judgment should be entered for Defendants on this issue.

### 3. 15 U.S.C. § 1692c

Plaintiffs also assert that they are entitled to relief under Section 1692c of the statute. Section 1692c addresses communication with the consumer. Generally, absent prior consent from the consumer or express permission given by a court, a debt collector may not communicate with a consumer about a debt at any unusual time or place, or in an inconvenient manner. Communication before 8 a.m. or after 9 p.m. is prohibited. 15 U.S.C. § 1692c(a)(1). In addition, if the debt collector knows the consumer is represented by an attorney, the debt collector must communicate with the attorney rather

---

[7] The term "consumer" means any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. § 1692a(3).

than directly with the consumer.   15 U.S.C. § 1692c(a)(2).   Debt collectors also are prohibited from contacting the consumer at the consumer's place of work if the employer has prohibited such communication.   15 U.S.C. § 1692c(a)(3).   Finally, if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that a consumer wishes the debt collector to cease further communication, the debt collector must stop communication except for advising the consumer either that the debt collector is ceasing collection efforts or to notify the consumer that the debt collector may invoke specific remedies.   15 U.S.C. § 1692c(c).

Plaintiffs alleged that "Calls were made to us after we requested in writing the defendants answer our dispute of the alleged debt, averaging at least two calls per week." (D.E. 33 at p. 3).   Plaintiffs also asserted that EverBank harassed them with "continuing harassing phone calls, ignoring the plaintiffs' requests for proper validation, refusing to answer questions put forth by the plaintiffs, and ignoring their sworn and signed affidavits." (D.E. 22 at p. 2).   Neither of these allegations state a claim under 15 U.S.C. § 1692c.   Plaintiffs have not alleged that the calls came at an inconvenient time and have not alleged that they notified either Defendant in writing that Plaintiffs either refused to pay the debt or wished the debt collector to cease further communication.   Therefore, Defendants are entitled to summary judgment on Plaintiffs' claims brought pursuant to 15 U.S.C. § 1692c.

### 4.  15 U.S.C. § 1692f

Section 1692f of the FDCPA addresses unfair practices performed by debt collectors.   Relevant to Plaintiffs' lawsuit, Section 1692f(6) prohibits the following:

Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if –

    (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    (B) there is no present intention to take possession of the property; or

    (C) the property is exempt by law from such dispossession or disablement.

Plaintiffs contend that Defendants proceeded with an illegal foreclosure of their property without providing proof that they were owners in due course of the "wet ink original promissory note."

The Fifth Circuit has considered and rejected the argument that before a party can foreclose, it must produce the original note bearing a "wet ink signature." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013)(collecting cases). The courts have concluded that Texas recognizes assignment of mortgages through various means, including those set out in the deed of trust to Plaintiffs' property.  "Under Texas law, a mortgage servicer can foreclose under a deed of trust, regardless of whether it is a holder."  *Wells v. BAC Home Loans Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987 at *3 (W.D. Tex. 2011).  A mortgage servicer is the "last person to whom the mortgagor has been instructed by the current mortgagee to send payment for the debt secured by a security instrument."  *Id.*, quoting Tex. Prop. Code Ann. § 51.0001(3) (West Supp. 2007).  "[T]o administer the foreclosure process, the mortgage servicer need only receive written authorization from the mortgagee and disclose that fact to the mortgagors."  *Id.* (citing Tex. Prop. Code Ann. § 51.0025).  "Nothing requires the mortgage servicer to possess the original promissory note."  *Id.*

19 / 28

The original deed of trust signed by Plaintiffs provided the following with regard to sale of the note or change of the loan servicer:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under this Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Deed of Trust, § 20 (D.E. 44-1 at p. 11).

Plaintiffs received written notice in July 2013 that servicing of their note was transferred to Everhome, a division of EverBank. Plaintiffs received another notice when servicing of their loan was transferred to Green Tree Servicing, LLC. In addition, Defendant EverBank attached a copy of a Transfer of Lien from EverBank to Ditech Financial, LLC f/k/a Greentree Servicing, LLC dated October 6, 2015 (D.E. 44-1 at pp. 4, 40). Also, HWA sent Plaintiffs notice on February 1, 2016 that Ditech Financial, LLC, as servicer of the note, was taking steps to foreclose on the note on behalf of the mortgagee (D.E. 15 at pp. 9-11).

Various holders of the note and loan servicers in this case have initiated foreclosure proceedings. Each time they did so, they had a present right to possession of the property under Texas law and the deed of trust and gave Plaintiffs notice of their

intent to foreclose.  Defendants were under no obligation to produce the original "wet ink" promissory note prior to initiating foreclosure proceedings.  Accordingly, Plaintiffs cannot make out a claim under § 1692f of the FDCPA and it is recommended that judgment be entered for Defendants on this issue.

### 5.  15 U.S.C. § 1692g

Section 1692g of the FDCPA describes the requirement that debt collectors have to verify the debt to the consumer.  Consumers are entitled to a written notice containing (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector within thirty days that the debt or any part of it is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and mail copies of the documents to the consumer; and (5) a statement that upon written request in the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.  15 U.S.C. § 1692g(a).

The statute further provides that if the consumer notifies the debtor within thirty days that the debt is disputed, the debt collector shall cease collection of the debt until the debt collector obtains verification of the debt or the judgment and mails a copy of the document to the consumer.  15 U.S.C. § 1692g(b).

Although the Fifth Circuit has not specifically addressed the requirements of verification under the FDCPA, other circuit courts have concluded that verification is not

intended to give a debtor a detailed accounting of the debt to be collected. "Instead, '[c]onsistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'" *Mack v. Progressive Financial Services, Inc.*, No. 4:13cv544, 2015 WL 123742 at *3 (E.D. Tex. 2015)(quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999); *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1003 (8th Cir. 2011) and *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006)).

In their second amended complaint, Plaintiffs aver that Defendants have violated 15 U.S.C. § 1692g by not producing evidence that they are the holders in due course of the "original wet ink promissory note, not a copy, and that the alleged promissory note is in their possession." (D.E. 33 at p. 2). Plaintiffs concede that Defendants produced a copy of the deed of trust in response to a question for verification (D.E. 22 at p. 1). Plaintiffs also received at least one statement showing the principal amount of the note and an explanation of the amount due (D.E. 33 at p. 5; D.E. 43 at p. 14). In addition, Plaintiffs do not dispute that Bank of America is the original creditor and do not argue that they have paid the debt in full.

Based on the foregoing, Plaintiffs cannot make out a claim that Defendants have not provided them with proper verification of the debt. As discussed above, a party intending to foreclose on a note does not have to produce a "wet ink" copy of the note. *Martins*, 722 F.3d at 254. Plaintiffs have obtained all the verification of the debt that they are entitled to under the FDCPA. *See Kiggundu v. Mortgage Electronic*

*Registration Systems, Inc.*, No. 4:11-1068, 2011 WL 2606359 at *6 (S.D. Tex. 2011)(Separate letters containing a copy of a deed of trust and a copy of a consumer's payment found to satisfy the verification of debt obligation); *Cunningham v. Credit Management, L.P.*, No. 3:09-cv-1497-G (BF), 2010 WL 3791104 at *3 (N.D. Tex. 2010)("While the FDCPA does give debtors an opportunity to dispute the validity of the debt, it does not give a 'debtors veto' that allows debtors to cease all collection efforts by rejecting a debt collector's verification.").  Accordingly, Plaintiffs' cause of action under 15 U.S.C. § 1692g should be dismissed and judgment entered for Defendants.

### 6.  Statute of Limitations

Defendant EverBank also argues that any FDCPA claims against it are barred by the one-year statute of limitations.  Because it is recommended that summary judgment be entered against Plaintiffs on other grounds, this issue is not addressed in this Memorandum and Recommendation.  Should the District Court determine that the limitations issue should be addressed, a supplemental Memorandum and Recommendation will be filed.

### D.  Racketeer Influenced and Corrupt Organizations

Plaintiffs assert Defendants' failure to respond to Plaintiffs' requests regarding how Defendants obtained the debt and how much they paid for it is a violation of the RICO statute, specifically 18 U.S.C. §§ 1961 and 1962.  Civil claims under RICO have three common elements:  "'(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'"  *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009)(quoting *Abraham v. Singh*, 480

F.3d 351, 355 (5th Cir. 2007)).  A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity.  *Id.*

Plaintiffs claim that Defendants engaged in the predicate criminal act of theft when they tried to auction the property without proof that that they owned the debt. However, not only is that a conclusory allegation, but, as discussed above, Defendants were legally entitled to foreclose on the note.  Nor have Plaintiffs stated a cause of action under the RICO statute for collection of an unlawful debt in violation of 18 U.S.C. § 1962(a) or (b).  "Unlawful debt" under RICO refers to a debt incurred in an illegal gambling activity or one which is unenforceable because it is usurious. 18 U.S.C. § 1961(6).  Plaintiffs have made no allegation that Defendants have engaged in either of those activities.  Accordingly, Plaintiffs cannot make out a civil RICO cause of action and judgment should be entered for Defendants.

### E.  Texas Business and Commerce Code

In their amended complaint, Plaintiffs cited UCC 1-308, although they did not make any factual allegations related to it.  Defendants argued in their motions to dismiss that Plaintiffs must have been citing to Tex. Bus. & Comm. Code § 1.308, which is Texas's implementation of UCC 1-308, but that the statute provides no cause of action. Plaintiffs, in their response to the motions to dismiss, agreed that they were not making a claim for a violation under the Uniform Commercial Code, but cited to it "so that our legal protection against all Un-Constitutional Demands of Public officials and their agents (sic)."  (D.E. 40 at p. 2).  To the extent that any claims Plaintiffs assert are related

to the Texas Business and Commerce Code or the Uniform Commercial Code, such claims should be dismissed.

### F.  12 U.S.C. § 1813

Plaintiffs made a passing reference to 12 U.S.C. § 1813 as part of their argument that Defendants never responded or provided proof that Plaintiffs were indebted to Defendants (D.E. 33 at p. 4).  That statute is part of the law that established the Federal Deposit Insurance Corporation (FDIC) and Section 1813 set out the definitions used in the chapter.  Plaintiffs have not set forth any factual allegations relating to the FDIC. Accordingly, Defendants are entitled to summary judgment on any claim brought by Plaintiffs based on 12 U.S.C. § 1813.

### G.  Intentional Infliction of Emotional Distress

Plaintiffs assert that because they have had to be extra vigilant with regard to events surrounding their mortgage, they have suffered emotional stress, inconvenience, embarrassment, and humiliation, in addition to having been damaged financially.  They state that they have suffered sleepless nights, have had to put locks on their gates and have not devoted as much time as needed to their other obligations such as social activities and spending time with their children and grandchildren.

In order to recover on a claim of intentional infliction of emotional distress, a plaintiff must show (1) that a defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) that the conduct caused him to suffer emotional distress; and (4) that the distress was severe.  *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 (5th Cir. 1996).  Conduct is considered outrageous "'if it

surpasses all bounds of decency, such that it is utterly intolerable in a civilized community.'" *Id.* (quoting *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993)).

Plaintiffs in this case have not asserted facts that show they were subjected to intentional infliction of emotional distress. The only conduct they cite is letters and phone calls from Defendants, none of which they have described as threatening, indecent or otherwise outrageous. Thus, they have not established a cause of action for intentional infliction of emotional distress and judgment should be entered for Defendants.

### H.    Foreclosure

As mentioned earlier, the status of the foreclosure of Plaintiffs' home is unknown. In Plaintiffs' original complaint, they request that the court "stop the auction of home 3/1/16" (D.E. 1 at 4). Plaintiffs' amended complaint does not have a similar claim. To the extent that Plaintiffs are raising a request for injunctive relief related to a foreclosure proceeding or making a claim for wrongful foreclosure, it is recommended that the claim be *sua sponte* dismissed as frivolous. Not only has Plaintiff failed to complete service of process on the mortgage servicer Ditech, it is well settled in Texas that "foreclosure enforces the deed of trust, not the underlying note." *Kan v. Onewest Bank, FSB,* 823 F.Supp.2d 464, 469 (W. Dist. Tex. 2011) (citing *Slaughter v. Qualls,* 139 Tex. 340, 346, 162 S.W.2d 671 (1942). "Nothing requires a mortgage servicer to possess the original promissory note as a prerequisite to foreclosure." *Martins*, 722 F.3d at 253; *Kan*, 823 F.Supp.2d at 469-70 (citations omitted).

### I.   Unserved Defendants

Plaintiffs failed to serve the remaining named Defendants in this case within ninety (90) days, failed to show cause for their failure to timely complete service, and failed to request additional time to do so; accordingly it is recommended that all remaining named Defendants be dismissed without prejudice for failure to timely complete service of process.  FED. R. CIV. P. 4(m).

## <u>RECOMMENDATION</u>

Based on the foregoing, it is respectfully recommended that Plaintiffs' motion for the undersigned to recuse herself (part of D.E. 33) be DENIED.   It is further recommended that Plaintiffs' Motion to Rebut Everbank's Motion to Dismiss, treated as a response to the construed motions for summary judgment (D.E. 40) be denied, and that Plaintiff's Motion for Summary Judgment, treated as a response to the construed motions for summary judgment (D.E. 43) also be denied.   Finally it is recommended that Defendants' Motions to Dismiss (D.E. 10, 12, 35, 37), converted to motions for summary judgment, be GRANTED, and that Plaintiffs' complaint and amended complaint be DISMISSED with prejudice.  To the extent that Plaintiffs have raised a claim of wrongful foreclosure or seek injunctive relief to stop any forfeiture, it is recommended that the claim be *sua sponte* dismissed without prejudice.  For all unserved Defendants it is

recommended that all claims against those Defendants be dismissed without prejudice for failure to timely complete service of process.

Respectfully submitted this 21st day of October, 2016.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).